## ALEXANDER *v.* BRUMFIELD.

[87 South. 9. No. 21542.]

1. BROKERS. *When broker entitled to commissions for sale of land on revocation of authority stated.*

When the owner of land contracts in writing with real estate broker for the sale thereof on commission revokes the authority thereby conferred on the broker, but afterwards orally directs the broker to proceed with the sale of the land, and the broker thereafter obtains a purchaser who buys the land, he is entitled to the commission for making the sale agreed on in the original contract.

2. BROKERS. *Broker selling portion of land he was authorized to sell, and also other land, held entitled to commissions only on former.*

When a broker who has been authorized to sell land for the owner on commission procures a purchaser to whom the owner sells a portion of the land, the broker is authorrized to sell, and also other land, the broker is entitled to commissions only on that portion of the land which he was authorized to sell.

124 Miss.—12

APPEAL from chancery court of Humphreys county.
HON. E. N. THOMAS, Chancellor.

Suit by Willis Brumfield against M. D. Alexander. From a judgment overruling a demurrer, defendant appeals. Affirmed and remanded, with leave to answer.

*J. M. Cashin,* for appellant.

Nothing is better settled in the law than that an authority to sell the land when not coupled with an interest may be revoked at the will of the principal. 1 Am. Eng. Enc. L. (2 Ed.), 1216, and authorities cited in Note 3. Nothing is better settled than that the phrase coupled with an interest means an interest in the thing sold (1b. 1218, Note 1) or than that a commission out of the proceeds of a sale to be made, is not such an interest (1b., Notes 3 and 4) and that this sale of the property by the principal is a revocation (1b., 1219, Note 3). It is equally well settled that a revocation of such authority may be made by the principal at his own pleasure, though the terms of the appointment declare that it shall be exclusive, or irrevocable." Meachem on Agency, sec. 204, Notes 3 and 4 thereto. All these propositions are removed from debatable territory. They are based on the ground of want of consideration, and they can be based on no other. This express reason is given by Chief Justice WAITE, speaking for the supreme court of the United States U. S. Supreme Court Rep., Vol. 125, p. 342, in *Walker* v. *Walker.*

It is not alleged in the bill that any consideration was paid by Brumfield to Alexander for the agency to sell the Bluesack Plantation. While exhibit "A" which does not authorize the sale of that place at all as we have shown, recites a consideration of one dollar cash in hand, that phrase is a part of a printed form upon which that contract was written, and does not amount to an allegation that a consideration, was paid. In point of fact, no consideration was paid for that contract. *Walker* v. *Denison,* 96 Ill. 142; *Stensgard* v. *Smith,* 43 Minn. 11.

On the requirement of mutuality, we refer also to *Steir* v. *Imperial Life Insurance Co.,* 58 Fed. Rep. 847; *Blackstone* v. *Buttermore,* 53 Pa. St. 266; *Wilcox* v. *Ewing,* 141 U. S. 627; Story on Agency, sec. 476; *McGregor* v. *Gardner,* 14 Iowa, 326; *Chambers* v. *Seay,* 73 Ila. 372.

The case at bar falls squarely within the rule announced in Story on Agency, sec. 463, and approved and upheld by the foregoing authorities, that: "The principal has the right to determine or revoke the authority given to his agent at his mere pleasure, for since the authority is conferred by his mere will, and is to be executed for his own benefit, and for his own purposes, the agent cannot insist upon acting when the principal has withdrawn his confidence and no longer desires his aid." That the agency was exclusive and for a fixed time does not change the rule that the principal has the right to revoke the agency at his pleasure. *Kolb* v. *Bennett Land Company, supra.* The term "exclusive agency" simply means that the agent having it, is the only agent authorized to make the sale to the exclusion of all other agents, and the principal may still negotiate a sale himself, entirely independent of the agent. *Armstrong* v. *Wann,* 29 Minn. 127; *Dole* v. *Sherwood,* 5 L. R. R. 720; *Golden Gate Packing Co.* v. *Farmers Union,* 55 Cal. 606.

We have treated the case precisely as if the verbal contract of sale made by the plaintiff had been a binding one and had been carried out, for that is the view most favorable to the defendant, in view of the finding of the court.

This view is entirely consistent with *Fairchild* v. *Rogers,* 32 Minn. 269, for in that case, the agent was given the exclusive right to sell and that too, for a valuable consideration paid by him to the owner of the property. Whatever might have been the value of the exclusive right to sell cannot affect this case, as the only right or privilege which Brumfield had, if he had any under the contract, was as an exclusive agent of Alexander. As such, the measure of damages, if any, could not be more than the

value of time and labor expended in his efforts to sell the Bluesack Plantation. *Armstrong* v. *Wann,* 29 Minn. 127.

There is but little, if any, conflict in authority upon the general proposition that the owner of the property may himself sell at any time prior to a sale made by the agent or broker, but there seems to be a conflict on the question whether the broker's right to sell is exclusive of the owner's right where the broker is given the right to sell for a certain definite time, or in terms, is given the exclusive right to sell.

In addition to the authorities cited above which hold that even where the broker is in terms given an exclusive right to sell for a definite time, the owner has the right to sell, the following authorities support that doctrine: *Ingold* v. *Simmons,* 125 Ia. 22, 99 N. W. 713, re-affirmed on a second appeal of the case in 134 Ia. 206, 111 N. W. 802; *Turner* v. *Baker* (Pa.), 74 Atl. 172; *Moor* v. *Ferguson,* 92 Minn. 201, 99 N. W. 804; *Gilbert* v. *Coons,* 37 Ill. App. 448; *Tracey* v. *Radeke* (Ia.), 119 N. W. 525; *Bayers* v. *Hyland,* 65 Minn. 150, 67 N. W. 1148; *Waterman* v. *Boltinghouse,* 28 Cal. 659, 23 Pac. 195; *Hoffman* v. *Maffioli,* 104 Mis. 630, 47 L. R. A. 427, 80 N. W. 1032; *Tei-pel* v. *Meyer,* 106 Wis. 41, 21 N. W. 982; *Kirschborn* v. *Nelden-Judson Drug Co.,* 26 Utah, 110, 72 Pac. 386; *Cold Blast Tr. Co.* v. *Kansas City Bolt & Nut Co.,* 57 L. R. A. 696, 114 Fed. 77; *A. Santanelle & Co.* v. *Otto F. Lange Co.* (C. C. A.), 15 Fed. 719; *Eastern R. R. Co.* v. *Tueur,* 127 Wis. 382, 105 N. W. 1067; *Smith* v. *Sharp,* 136 Am. St. Rep. 52, 50 So. 381; *Chaffe* v. *Widman,* 139 Am. St. Rep. 220, Note 229.

There cases are all in accord with the doctrine announced in the case of *Kolb* v. *Bennett Land Co.,* 74 Miss. 567, and the authorities therein cited.

Allegations of Bill Insufficient to Show New Contract or a Restitution of the Old Contract Which Had Been Revoked.

The appellee alleges in his bill that after the trade with Nichols had fallen through, Alexander requested him to continue his efforts to sell the place, and that he did so, and interested J. H. Kimbrough in the place and that thereafter, J. H. Kimbrough came to Belzoni and saw Alexander, and afterwards Kimbrough and his brothers purchased the place from Alexander.

At the time the Kimbroughs bought the place, even conceding for the purpose of argument that the appellee was authorized by the contract, Exhibit "A" to sell the Bluesack Plantation, the bill shows that that contract had been revoked in three ways; first by the letter, Exhibit "B" to the bill; and second by the contract of sale by Alexander to Nichols; and the third by the payment to Blumfield by Alexander of two thousand, three hundred and ten dollars, which amounted to an accord and satisfaction of any claim Brumfield had under the contract for the sale of Bluesack Plantation, even if Exhibit "A" to the bill were such a contract, which it unquestionably is not.

Therefore, a request to continue his efforts to sell the plantation did not amount to a restoration of the contract upon which Blumfield sues (even if that were a contract, and we have shown that it is not), and it is not alleged in the bill that it was, or that Alexander requested Brumfield to continute his efforts to sell Bluesack Plantation upon the terms, as to price and compensation stated in the so-called contract, Exhibit "A" to the bill. A request to continue efforts to sell land, where there is no allegation as to the terms of the sale, or as to compensation to be paid, if any, certainly does not amount to a contract on the part of Alexander to pay Brumfield in addition to the two thousand, three hundred and ten dollars already paid, eight thousand, eight hundred dollars overage, whatever this is, and give him the rents and crops received from the place during the year 1919. If any contract at all, why is it not a contract for Brumfield to continue his efforts to sell the place in consideration of the two thous-

and, three hundred and ten dollars, which Alexander had already paid him, and to which he was not entitled under any contract then or thereafter existing between Alexander and himself?

A pleader is presumed to have stated his case as strongly in his favor as the facts will warrant, and therefore allegations in a pleading are construed most strongly against the pleader.

We submit that the decree appealed from should be reversed, the demurrer sustained, and the bill dismissed, for the reasons already argued in this brief.

1. Because Exhibit "A" to the bill shows that there was never any such contract between Brumfield and Alexander as is alleged in the bill.

2. Even if there were, it is shown by the bill that the contract was revoked by Alexander, and that he had a right to revoke it without incurring any liability to Brumfield.

3. Because no contract other than that shown as Exhibit "A" to the bill is alleged therein as a foundation for any recovery against Alexander, and the facts alleged in the bill which are not in conflict with Exhibit "A" do not show any right of recovery against Alexander at all.

*Mortimer & Sykes,* for appellee.

Counsel now says that under the Kolb case, this contract was unilateral and revokable at will. That is good law, and we admit that the contract is unilateral and revokable as above. He then says the Nichols sale terminated it. For the reason given above, the Nichols sale could not terminate anything. So now he says you can't affirm this case unless you reverse the Kolb case. Counsel misconceives the Kolb case. The Kolb case has no application to this case, except as an authority to sustain us.

A mere statement of this case differentiates it from the Kolb case. In the latter case, Kolb found his own pur-

chaser, and the land company had nothing to do with him. In the instant case, Alexander sold to a purchaser produced by Brumfield, and with full knowledge that Brumfield produced him. What does Judge CALHOUN say about this sort of case?

"The object of the power was that the land company might effect a sale with or without Kolb's assistance. Until it effected this, with or without Kolb's aid, it was entitled to nothing under the writing as a contract." *Kolb* v. *Land Co.,* 74 Miss. 570, *E. converso.* If Kolb had sold to a purchaser produced by the land company the latter would have been entitled to its commission.

Appellee was admittedly the procuring cause of the sale. Under his contract he was to effect a sale, and he did so. There is practically an unanimity of opinion on this subject, where the broker is the procuring cause. *Ritch* v. *Roberson* (Conn.), 7 A. L. R. 81, Syllabi, paragraph 8, citing 4 R. C. L. 320; 9 Corpus Juris., page 611; *Goldsmith* v. *Coxe,* 805 C. 341, 61 S. E. 555; 9 C. J., page 613, sec. 2; See also 9 C. J., page 614, sec. 3. The test in these cases is always: "Was the broker the procuring cause?" If he was, he is entitled to his commissions.

This matter is already definitely settled in this state in line with the above authorities. See *Enochs* v. *Paxton,* 40 So. 14; *Ferguson* v. *Quick,* 78 So. 168; *Kolb* v. *Land Company,* 74 Miss. 570.

It is true that a suggestion of error was sustained to the Ferguson case because the evidence was developed in such a manner as to make it difficult to fully understand it. See 70 So. 83.

Yet the principles of law announced in the first opinion are unchanged and lay down correct principles.

For the reasons herein given, we submit the case should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an appeal, to settle the principles of the case, from a decree overruling a demurrer to an original bill.

The bill alleges, in substance, that the appellant contracted in writing with the appellee, a real estate broker, by which he agreed to give to the appellant the exclusive right to sell his, the appellant's Bluesack plantation, the material portion of this contract, which was made an exhibit to the bill, being as follows:

"I, M. D. Alexander, of Belzoni, Miss., the first party, for and in consideration of one dollar cash in hand paid to me by Willis Brumfield, of Belzoni, Miss., second party, do hereby agree and grant unto said second party the exclusive right to sell the following lands owned by me, situated in the county of Humphreys, in the state of Mississippi, to wit: Lot 3, section 21, township 15, range 3, west —containing four hundred and twenty acres, at the price of one hundred and ten dollars per acre upon the following term: At the price of $———— upon the following terms: Cash on delivery of the deed fifteen thousand dollars, and the balance in eight equal annual payments to bear six per cent. interest from date of sale. Said agreement of sale to expire January 1, 1920. In the event of sale before the end of 1919, possession to be given January, 1920, or at time of sale provided purchaser purchases live stock and accounts. First party agrees to pay said second party a commision of five per cent. on the total amount of the above-mentioned price for effecting a sale of said property, or for producing a purchaser ready, able, and willing to buy said property on said terms, and agrees that, if second party shall effect a sale thereof at a greater price than that above named, to pay the excess to the second party as extra compensation for making the said sale."

The bill further alleges:

That while the appellee was endeavoring to sell the plantation and had about negotiated a sale thereof he received the following letter from the appellant's attorney:

"Mr. M. D. Alexander to-day got me to write a contract for the sale of his Bluesack or Belgrade plantation to Mr.

C. L. Nichols. It is believed that there is little, if any, doubt that the contract will be consummated within sixty days. Mr. Alexander requests me to advise you of this fact so that you need go to no further trouble in the way of finding a·purchaser, and to say that when the sale is consummated he will pay you the commission for which in my opinion he is liable to you."

That within a few days after receipt of this letter the appellant called on the appellee and paid him the sum of two thousand, three hundred and ten dollars, the amount of commissions he would have earned had he sold the plantation for the appellant at the agreed price. That afterwards the appellant told the appellee that his trade with Nichols had not materialized, and for him, the appellee, to proceed with the sale of the land, which he did, resulting in his securing a prospective purchaser who came to Belzoni, the place at which both the appellant and the appellee resided, for the purpose of inspecting the plantation with the view of buying. That he called at the appellee's office, and, finding him out, called on the appellant and told him of his appointment with the appellee and of his failure to find the appellee at his office and requested the appellant to show him the plantation. This the appellant did, the result being that the plantation was purchased from the appellant by this purchaser who had been secured by the appellee for thirty-six thousand dollars, being eight thousand more than the price the appellant had agreed with and the appellee to take for it, the appellant also reserving to himself the crops then growing on the land. The deed executed by the appellant to the purchaser is made an exhibit to the bill, and the land therein conveyed is described as follows:

"The north half of section 20 and all that part of lot 3, section 21, lying north of Atchafalaya Bayou, all in township 15, range 3 west, except that part thereof embraced in the right of way of the Yazoo & Mississippi Valley Railroad Company, containing four hundred and twenty acres,

more or less, known as the Bluesack plantation, except that part thereof described in the final decree rendered by the chancery court of Washington county, Miss., on the 30th day of October, 1907, in the suit of *Mary S. Powell* v. *Virginia Prewitt et al.,* No. 3315 on the docket of said court, and being the same land conveyed to me by H. W. Lesser and Loula Bell Lesser by deed dated 16th day of January, 1918, which deed is filed for record in Washington county, Miss., on January 19, 1918."

The prayer of the bill is for a discovery of the value of the crops growing on the land in 1919, the year in which it was sold, and for a decree:

"That your complainant is entitled to a commission of five per cent. on forty-six thousand two hundred dollars; that he is further entitled to an overage of eight thousand, eight hundred dollars, being the difference between the fifty-five thousand dollars, the price paid by said Kimbrough, brothers, defendants, and the forty-six thousand two hundred dollars, the price fixed in his broker's contract, any amount that the said special master finds to have been realized by the said Alexander, defendant, by virtue of his 1919 rentals on said land, and his interest in the growing crops thereon for the year 1919, less a credit of two thousand three hundred and ten dollars," etc.

The grounds on which it is here sought to reverse the decree of the court below are: First, that the contract executed by the appellant to the appellee was without consideration, and therefore revokable at his pleasure, and was in fact revoked by the latter from the appellant's attorney to the appellee referred to in the bill; and, second, that the land sold by the appellant is not that described in his contract with the appellee.

1. Whether or not the appellant had the right to revoke his contract with the appellee and also whether or not it was in fact revoked by the letter of his attorney are not here material, for it is expressly alleged in the bill that

thereafter the appellant told the appellee "to continue his efforts to sell said plantation," which, without more, must be held to mean in accordance with the terms of the original agreement, and that the appellee, pursuant thereto, did produce a purchaser ready, willing, and able to, and who in fact did, buy. If this is true the appellee is entitled to the compensation agreed on. We are not now called on to determine whether or not such compensation will include the crops and rent for the year in which the land was sold for the demurrer, in so far as this ground thereof is concerned, was properly overruled without reference to whether or not the appellant must account to the appellee for the value of the crop.

2. The land which the appellee was to sell for the appellant is referred to in the bill as the Bluesack plantation, but the exhibit thereto, which must control, described it as lot 3, section 21 township 15, range 3 west, and the land actually sold by the appellant is described in the deed thereto as the north half of section 20 and all that part of lot 3, section 21, lying north of the Atchafalaya Bayou, etc., as hereinbefore set out. The land sold by the appellant therefore embraces, according to the allegations of the bill only a part of that which the appellee had the right to sell. He is therefore entitled to recover only commissions due him for the sale of that portion of the land included in the appellant's deed to the purchaser, and then only in event the commissions already received by him are insufficient to cover commissions on that portion of the land sold.

Affirmed and remanded, with leave for the appellant to answer within thirty days after the filing of the mandate in the court below.

*Affirmed and remanded.*